# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> MALIBU LIGHTING CORPORATION, *et al.*, <br><br> Debtors. | Chapter 11 <br><br> Case No. 15-12080-KG <br> Jointly Administered <br><br> Hearing Date: April 28, 2016 at 10:00 a.m. <br><br> Related Docket No. 1163 |

## LIMITED OBJECTION OF
## CONTINENTAL INSURANCE COMPANY AND COLUMBIA CASUALTY COMPANY TO MOTION OF FELIX GONZALEZ FOR RELIEF FROM AUTOMATIC STAY

The Continental Insurance Company and Columbia Casualty Company, on behalf of themselves (collectively, "***Columbia***"), by and through undersigned counsel, hereby assert this limited objection (this "***Limited Objection***") to Movant Felix Gonzalez's (the "***Movant***" or "***Gonzalez***") Motion for Relief from Automatic Stay filed on March 23, 2017 [Docket No. 1163] (the "***Motion***"). In support of its Limited Objection, Columbia respectfully states as follows.

### Introduction

1. Columbia does not oppose liquidating Movant's claim, and agrees the claim must ultimately be liquidated. The resolution of this claim—and others like it—would have an impact on the Debtors' estates, however. That is because the relevant insurance policies contain a self-insured retention applicable to each claimed occurrence under such policies. Thus, any costs associated with Movant's pursuit of his claims would result in additional liability incurred by the Debtors and an increase in unsecured claims.

2. Columbia is continuing to investigate the retention amount applicable to Movant's claim. The relevant endorsement establishes a $100,000 per claim retention for some claims, and a $10,000 per claim retention for others. Based on the type of claim described in the

Motion, a $100,000 retention is likely to apply to Movant's claim. But even if the retention in question is $10,000, there are other similarly situated claims to which the $100,000 retention applies, and, taken together, the claims within the self-insured retention could be economically significant to these bankruptcy estates. Columbia therefore proposes that consideration of Movant's request for stay relief should be deferred for a period of sixty (60) days, in order to determine how best to address the treatment of the self-insured retention across the entire portfolio of insured claims, whether through a confirmed plan, an alternative dispute resolution procedure, or otherwise.

3. The Debtors have completed a series of major sales of their assets, and recently obtained a fifth extension, *see* Docket No. 1136, of their exclusivity period to propose a plan— all in order to allow sufficient time to complete the claims resolution and plan confirmation process. Indeed, in their most recent motion to extend the exclusivity periods to file a plan, *see* Docket No. 1122, the Debtors represented that they are in the process of preparing a draft disclosure statement and related plan and are in discussions with the Committee and other non-debtor parties over the structure of a potential chapter 11 plan that would conclude these chapter 11 cases. Columbia, too, has been involved in these discussions, in part, to assist the Debtors in devising an efficient and fair process for resolving open personal injury claims. It is simply too early at this juncture, before the Debtors' claims resolution process has been completed or a reorganization plan been proposed, to modify the automatic stay piecemeal for every potential personal injury claim.

4. Notably, Columbia already pursued, without objection from the Debtors, an alternative dispute resolution procedure with other claimants who had sought stay relief and which resulted in the efficient and consensual resolution of some of these claims. Based on this

model, Columbia is now engaged in discussions with the Debtors and other key parties in interest in order to explore the possibility of reaching an overall protocol to resolve such claims as part of a plan or otherwise. Such a protocol would promote the efficient and consensual resolution of such claims and in turn the efficient administration of this case for the benefit of all creditors.

5. Columbia requests, therefore, that the Court either deny the Motion without prejudice or hold it in abeyance for at least sixty (60) days. Such a delay would not prejudice Movant's substantive rights, and would allow Columbia an opportunity to investigate the amount of the applicable retention, as well as the proposed treatment of that retention in the context of the Debtors' reorganization.

**Background**

6. On October 8, 2015, (the "*Petition Date*"), each of the above-captioned Debtors (the "*Debtors*") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "*Bankruptcy Code*"). The Debtors continue to act as debtors-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108.

7. On February 17, 2017, the Debtors filed a motion seeking to extend for the fifth time the exclusivity period in which to file their chapter 11 plan [Docket No. 1122] (the "*Fifth Extension Motion*"). The Debtors requested the extension in order to, among other things, "advance and hopefully conclude these discussions [over the structure of a potential chapter 11 plan], and then propose a consensual chapter 11 plan that would have the support of the major economic constituencies." Fifth Extension Motion, ¶ 21. On March 7, 2017, the Court entered an order granting the Fifth Extension Motion. *See* Docket No. 1136.

8. The Debtors have also completed and consummated the sales of their respective assets and have made substantial progress in the objection to and reduction of claims filed in

their chapter 11 cases. The Debtors and the Committee have worked collaboratively to reconcile claims and the Debtors have filed several omnibus and standalone objections to claims resulting in the disallowance of approximately $15,000,000 in claims to date. *See* Fifth Extension Motion, ¶¶ 11, 21. The Debtors are in the process of preparing a plan and related disclosure statement in order to exit these chapter 11 cases. In that regard the Debtors have been "in discussions with the Committee and other nondebtor parties over the structure of a potential chapter 11 plan that would conclude these chapter 11 cases." *See Id.*, ¶ 21. Columbia is also engaged in discussions with the Debtors and other key parties in interest in order to explore the possibility of reaching an overall protocol to resolve such claims as part of a plan or otherwise. Such a protocol would promote the efficient and consensual resolution of such claims and in turn the efficient administration of this case for the benefit of all creditors.

9. On February 8, 2016, Columbia filed proofs of claim in each of the Debtors' jointly administered cases, marked as Claim Nos. 201-205, for an unliquidated amount (the "*Columbia Claims*"). The Columbia Claims are based on certain insurance policies issued by Columbia to the Debtors prior to the commencement of these chapter 11 proceedings (the "*Insurance Policies*"). The Debtors were insured by Columbia under the Insurance Policies which cover, among other things, general liability, director & officers, employment practices liability, and marine/war cargo coverage.

10. The Insurance Policies provide that a self-insured retention amount (the "*SIR*") applies to each claimed occurrence under the Insurance Policies. Columbia's coverage is excess of the SIR with respect to claims under the Insurance Policies.

11. The Columbia Claims asserted an aggregate and estimated range of potential exposure under the Insurance Policies in the amount of $950,000, based on the currently pending

claims and the relevant SIR amounts to which Columbia is entitled to reimbursement. This estimate has been continually revised as Columbia's loss experience under the Insurance Policies continues to develop. Columbia now estimates that the range of potential exposure under the Insurance Policies may reach in excess of $1.4 million. The Columbia Claims were filed as unliquidated claims and Columbia reserved the right to amend the Columbia Claims in order to reflect the most current estimate of the deductible reimbursement and related charges expected to accrue under the Insurance Policies. Additionally, Columbia claimed any premiums and related charges which have accrued, and continue to accrue, after the Petition Date and reserved the right to file an administrative claim pursuant to 11 U.S.C. § 507(a)(2) relating to such amounts.

12. The Motion alleges that Movant suffered injuries when he was hooking up a turkey fryer that he had bought to a propane tank and turned on the gas and began the steps to light the grill. Motion, ¶¶ 3-4. According to the allegations in the Motion, the regulator between the tank and the turkey fryer broke, and portions struck Movant causing him injuries. *See Id.* On July 28, 2015, Movant filed a lawsuit in the Circuit Court of the 17th Judicial Circuit in and for Broward County, Florida, styled *Felix Gonzalez v. The Brinkmann Corporation*, Case No. 15-012261(02) (the "**Florida Litigation**"). Motion, ¶ 7. Movant also allegedly filed a proof of claim in these chapter 11 cases based on such injuries. *See* Motion, ¶ 2.

13. Movant further alleges, "upon information and belief," that the Debtors maintained liability insurance coverage and that one of these insurance policies is applicable to the alleged damages. Motion, ¶¶ 6, 8.

14. Movant seeks recovery "only from applicable insurance, if any." Motion, ¶ 11.

**Limited Objection**

A. **Lifting the Automatic Stay Would Directly Impact the Debtors' Estates. Movant's Claims and Resolution of the Florida Litigation May Be More Appropriately Addressed in the Context of a Plan.**

15. The Motion suggests that lifting the automatic stay will not cause prejudice to the Debtors because Movant is seeking to pursue his claims "only from applicable insurance, if any, and waives any deficiency or other claim against the Debtor." Motion, ¶ 11. But it is not correct to suggest that stay relief would have no prejudice or impact on the Debtors' estates because the Debtors are fully liable for any costs up to the maximum amount of the SIR. Thus, any costs associated with Movant's pursuit of his claims, whether in the form of attorneys' fees or the actual cost of a potential award, would automatically result in additional liability incurred by the Debtors and an increase in unsecured claims. While these costs may be relatively small with respect to any one particular claim, the value and economic impact of the Debtors' obligations within the SIR could well exceed $1,400,000. Indeed, Movant's claim is likely to result in the Debtors' liability for the full $100,000 SIR amount as Movant's proof of claim alone states, at minimum, that he "intends to claim damages of two million dollars [$2,000,000]." Proof of Claim No. 104, p. 2.

16. At this point, there are between ten and sixteen claims under the Columbia Insurance Policies that could implicate the SIR. Many more could be filed or otherwise asserted. Already, Columbia has resolved the claim of a personal injury claimant who had previously sought relief from the automatic stay but who agreed, after Columbia's limited objection, to submit to an alternative dispute resolution procedure. *See* Docket Nos. 445, 480, 588, 779, 793. This procedure resulted in an efficient and consensual resolution of the claim, contributing to the overall administration of these chapter 11 cases. Columbia has successfully stipulated with two

other claimants to follow such a procedure, and recently reached a consensual resolution in connection with one of these claims pending documentation. *See* Docket Nos. 1064, 1089. Many more claims may yet emerge which have not been identified by Columbia or the Debtors to date.

17. Such claims may be more appropriately and efficiently handled in conjunction with the Debtors' plan and claims resolution process, or, perhaps through alternative dispute resolution procedures. *See, e.g.*, *In re Caribbean Petroleum Corp.*, 2012 Bankr. LEXIS 2322, at *4 (Bankr. D. Del. May 24, 2012) (noting that "[t]he Confirmation Order provides procedures for determining the allowed amount of valid Tort Claims through direct negotiation or alternative dispute resolution (the 'Claims Administration Procedure')") (Gross, J.). Indeed, as discussed, Columbia has already successfully pursued such a procedure with other personal injury claimants.

18. Moreover, Columbia is engaged in global discussions with the Debtors, Committee representatives, and other key parties in interest in order to explore the possibility of reaching an overall protocol to resolve such claims as part of a plan or otherwise. Such a protocol may be modeled after Columbia's already successful resolution of personal injury claims in these cases and may be incorporated into the Debtors' Plan. Devising such a protocol, including its incorporation into a Plan, would promote the efficient and consensual resolution of such claims and in turn the efficient administration of this case for the benefit of all creditors.

19. Columbia, along with the Debtors and other key parties in interest, should have the opportunity to explore such a mechanism for the efficient administration of these claims. The Debtors have only recently completed major sales of their assets and, as of this filing, obtained five extensions of the exclusivity period to propose a plan in order to allow for

sufficient time to complete the claims resolution process and finalize such a plan. *See* Fifth Extension Motion, ¶ 21. It is simply too early at this juncture to modify the automatic stay piecemeal for every potential insurance claim without providing a reasonable opportunity to determine how the Debtors propose to address such claims and the relevant retention amounts. The Court should therefore either deny the Motion or hold it in abeyance for at least sixty (60) days.

20. Such a delay would not prejudice Movant's substantive rights. Indeed, in similar circumstances, courts *have applied* the automatic stay to non-debtor parties in cases where (a) there was a claim against the debtor's insurer, (b) the debtor owed *contribution or indemnification* liability to the non-debtor codefendant, or (c) the debtor was said to be the real party defendant, *because of the potential for adverse economic consequences to the debtor's estate*. *See In re Lomas Financial Corp.,* 117 B.R. 64, 68 (S.D.N.Y. 1990); *A.H. Robins Co.*, 788 F.2d 994, 999 (4th Cir. 1986); *In re Johns-Manville Corp.*, 26 B.R. 420, 435-36 (Bankr. S.D.N.Y. 1983). Moreover, collateral estoppel concerns may justify applying the automatic stay to non-debtors. *See In re Am. Film Techs., Inc.*, 175 B.R. 847, 854 (Bankr. D. Del. 1994) (where the court extended stay to non-debtors due to collateral estoppel prejudice suffered by the debtor if the litigation was permitted to continue without the participation of the debtor); *In re Ionosphere Clubs, Inc.,* 111 B.R. 423, 435 (Bankr. S.D.N.Y. 1990) ("a finding of liability as to codefendants may be extended to [the Debtor], and collateral estoppel may bar the Debtor from litigating factual and legal issues critical to its defense"). The ultimate test is whether the action against the non-debtor is sufficiently likely to have a material effect upon the debtor's reorganization efforts. *See In re Uni-Marts, LLC*, 399 B.R. 400, 416 (Bankr. D. Del. 2009).

21. As in cases where non-debtors are entitled to indemnification or contribution,

Columbia is entitled to direct reimbursement from the Debtors of the SIR amount for every claim or occurrence pursuant to the Insurance Policies. Lifting the automatic stay to allow Movant to go forward with his claims and pursue the Florida Litigation would result in the Debtors' incurring additional liability, thus harming their efforts to reorganize before a plan has even been proposed or the claims resolution process completed.[1]

22. A short delay in granting the present Motion would not impair Movant's substantive rights and would afford Columbia an opportunity to determine the Debtors' plans to address such claims. Movant would not be prejudiced by a delay, let alone the short one proposed here. Indeed, as admitted in the Motion, this claim has been pending for over four (4) years, *see* Motion, ¶ 3, and Movant only commenced the Florida Litigation just before the filing of the Debtors' chapter 11 cases. *See* Motion, ¶ 7. Moreover, Columbia needs additional time and information to determine whether such a claim is covered by the Insurance Policies and whether the Debtors' claims resolution and plan confirmation process is a more appropriate context for resolving the claim.

23. Nonetheless, to the extent that the Insurance Policies apply to Movant's claim, Columbia is interested in the most expeditious and efficient resolution of the claim as possible. The most efficient resolution of this claim and many other similar claims that are pending or may yet emerge in this case, however, may lie in a claims resolution protocol devised by the Debtors, Columbia, and other key parties in interest as part of an eventual plan or other mechanism. Columbia and the Debtors should be given the opportunity to explore such possibilities.

---

[1] The Debtors have reserved the right to argue that, by custom and practice, the SIR should be treated like a deductible. Columbia takes the position that the SIR is a true SIR, and reserves all of its rights, arguments, and defenses in that regard. In either case, the prosecution of Movant's claim will have an economic impact on the Debtors' estates.

24. Moreover, Columbia reserves all of its procedural and substantive rights and defenses to contest the claims described in the Motion.[2]

### Conclusion

WHEREFORE, for the foregoing reasons, Columbia respectfully requests that the Court deny the Motion, or alternatively hold the Motion in abeyance for at least sixty (60) days, and grant Columbia such other and further relief as the Court may deem just and proper.

Date: April 21, 2017
Wilmington, DE

SULLIVAN · HAZELTINE · ALLINSON LLC

*/s/ E.E. Allinson III*
Elihu E. Allinson III (No. 3476)
901 North Market Street, Suite 1300
Wilmington, DE 19801
Tel: (302) 428-8191
Fax: (302) 428-8195

and

**LOCKE LORD LLP**
Jonathan W. Young
Michael B. Kind
111 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-443-0700
Facsimile: 312-443-0336

*Attorneys for The Continental Insurance Company and Columbia Casualty Company, on behalf of themselves*

---

[2] Moreover, Columbia reserves the right to argue that any order modifying the automatic stay should condition such modification on limiting Columbia's potential liability to those amounts in excess of the Debtors' SIR and to the extent of the limits of the Insurance Policies.